785 F.2d 308
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
WILLIE HALL, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 85-5136
 United States Court of Appeals, Sixth Circuit.
 1/21/86
 
 BEFORE: LIVELY, Chief Judge; WELLFORD, Circuit Judge; and PORTER*, Senior District Judge.
 PER CURIAM.
 
 
 1
 Plaintiff, Willie Hall, appeals from a district court order granting summary judgment to defendant, Secretary of Health and Human Services. Hall filed an application for a period of disability and social securi y disability benefits, which were denied initially and on reconsideration by the Secretary. After a hearing, an Administrative Law Judge (ALJ) issued a decision on April 27, 1982, in which he denied the claim, and this decision was affirmed by the Appeals Council.
 
 
 2
 Upon initial consideration, the district court remanded the case to the ALJ.[1] On remand, the ALJ again recommended that benefits be denied; the Appeals Council also adopted the findings and conclusions of the ALJ. The district court then granted summary judgment to defendant Secretary.
 
 
 3
 Plaintiff attended school only through the fifth grade and is semi-literate. He worked as an underground coal miner from 1946 to 1964. He later worked on the 'Leslie, Knott, Letcher, Perry [Federal] Manpower Program,' for fourteen years, the last twelve of which were spent as a nightwatchman 'engaging in primarily sedentary work.' Plaintiff testified that he was only able to perform his duties as nightwatchman due to the leniency of his immediate supervisor and the assistance of his son.
 
 
 4
 A month prior to filing for social security disability benefits, Hall was determined to be eligible for black lung benefits. Hall now alleges that the onset date of his eligibility is June 14, 1981, when he gave up voluntarily his job as a nighwatchman. When asked how he came to quit this job, Hall testified:
 
 
 5
 HALL: Well, when I got on my black, you know, my black lung check come, I felt like it was my duty to go then to the company and tell them what had happened and I was disabled as far as that was and I knowed it as far as that was but then I went over there and told him and he told me I wasn't allowed to work no more. He said 'You got to quit, if you're on this here black lung a drawing it.'
 
 
 6
 Q (By ALJ): All right now, you had to have, you have to establish need before they would hire you on that program or did you, did it make a difference between having bread on the table and not having bread on the table when you worked there for the LKLP?
 
 
 7
 A: Yeah, they was a outfit (INAUDIBLE) about knowed if you had no bread on the table before you would get on, I'd have to say that.
 
 
 8
 Q: So they laid you off when you were awarded the black lung benefits?
 
 
 9
 A: Yeah, they said I wasn't allowed to be on the program, no man was when there was no income like that--I was about to quit, I was going to have to quit though, black lung or no black lung immediately. I about went my limit on account of I'm sick, my nerves and heart is acting up.
 
 
 10
 The ALJ concluded 'that the claimant is not highly motivated to return to his past relevant work as a nightwatchman.'[2]
 
 
 11
 The medical testimony offered by plaintiff is well summarized by Judge Unthank in his memorandum opinion in this case:
 
 
 12
 1. Dr. Martin, who examined plaintiff on September 5, 1973, found category 2/2q pneumoconiosis and stated that plaintiff could not return to underground mining because of his 'silicosis.' (Ex. 13, Tr. 100).
 
 
 13
 2. Dr. Stumbo examined the plaintiff on December 14, 1973 and diagnosed pneumoconiosis, category 1/2q and found plaintiff was 'totally and permanently disabled for his usual and accepted occupation as an underground coal miner' and further that he would not be able to compete in general labor market because of educational background, occupational history and lack of vocational training. (Ex. 14, Tr. 10).
 
 
 14
 3. Dr. Coldiron, by report dated August 28, 1973, found pneumoconiosis, Category II but did not express any opinion of capacity to work. (Ex. 15, Tr. 102).
 
 
 15
 4. Dr. Brandon, a radiologist, who stated his x-rays revealed mild sponlylosis, calcification consistent with degenerative disc disease and pneumoconiosis, Category p type, 1/2 profusion but did not express any opinion as to capacity to work.
 
 
 16
 5. Dr. White examined plaintiff on August 1, 1981 and reported he found no evidence of nerve root compression, that knee was within normal limits, that plaintiff refused spirometry examination, and that x-ray showed 'some evidence of hyperinflation and increased interstitial markings.' (Ex. 17, Tr. 104).
 
 
 17
 6. Dr. Begley reported normal spirometry after examination on October 24, 1981, with comment 'comprehension by the patient was good, cooperation during testing was poor, and the effort expended was poor.' (Ex. 18, Tr. 109).
 
 
 18
 7. Dr. Caudill, by report dated March 29, 1982, found the typical findings of chronic airway diseases with increased AP diameter and increased resonance' and concluded:
 
 
 19
 'By my exam, he would be disabled for work involving physical exertion, such as lifting or walking and also for dust exposure jobs. His depression would possibly interfere with work as it usually interferes with concentration and memory, but this problem should improve on treatment whereas the airway disease is permanent.' (Ex. 23, Tr. 116).
 
 
 20
 The plaintiff, at the hearing, stated he was only able to perform his duties while working in the manpower program for the 14 years previous to his filing [this] claim.
 
 
 21
 Plaintiff alleged essentially five complaints--back and right knee pain, stomach trouble, nervousness, shortness of breath, and chest pains. With respect to claimant's complaint of back[3] and knee pain, the ALJ noted that only one of the physicians who examined claimant noted these complaints and, upon thorough examination, found no physical basis for them. Similarly, the ALJ found that claimant's 'physicians have made no diagnosis of any significant gastrointestinal condition and a consultative examination was negative except for slight tenderness in the epigastric area to palpitation.' Although claimant testified that he is taking Elavil for his depression, the ALJ noted that the only physician who discussed this complaint in his report found that plaintiff's conditions 'should improve on treatment.' Thus, the ALJ found none of these complications formed the basis for a severe impairment.
 
 
 22
 With respect to plaintiff's complaint of chest pains, the ALJ found little evidentiary basis for a finding of impairment:
 
 
 23
 A recent examination revealed his heart was normal to auscultation [i.e., listening to heartbeat] (Exhibit No. 23), and that the claimant stated his chest pain was relieved by Nitroglycerin, which suggested mild angina. However, no other physician of record has diagnosed angina pectoris, and his description of his chest pain is atypical for cardiac pain (Exhibit No. 17). Physical examination on August 1, 1981, revealed no evidence of congestive heart failure or hypertension (Exhibit No. 17). His electorcardiogram revealed a normal sinus rhythm with very slight left axis deviation and non-specific ST-T wave changes. A chest x-ray showed his cardiothoracic ratio was within normal limits and the cardiac silhouette was of normal size. The claimant has no medically documented severe cardiovascular disease.
 
 
 24
 We find, as did the district court, that there is substantial evidentiary support for this finding.
 
 
 25
 The ALJ finally assessed plaintiff's respiratory complaints. Although these apparently formed the basis for the award of black lung benefits, the ALJ accorded 'little weight' to the reports of Drs. Brandon, Martin and Stumbo, primarily because none of the three offered substantive medical evidence to support the physicians' conclusions as to capacity to work.
 
 
 26
 Receipt of black lung benefits is not determinative of disability under Social Security regulations, see 20 C.F.R. Sec. 404.1504. The ALJ found that claimant's testimony to 'a markedly restricted lifestyle . . . is not corroborated by the medical evidence of record.' Further, the ALJ did not find 'the claimant's allegations of disabling pain and shortness of breath to be credible' in light of the testimony given, the medical record, and his own observations at the hearing. The ALJ also noted that claimant's work as a coal miner does not constitute past relevant work under 20 C.F.R. Sec. 404.1565, since it was performed over fifteen years ago. Since the tests of claimant's respiratory function, or spirometry, showed claimant's performance well within normal limits, the ALJ concluded that claimant could perform his past relevant work as a nightwatchman. We find substantial evidence to support this conclusion, because we agree that Hall's past relevant work as a nightwatchman was essentially sedentary, and there was no significant exposure the fourth step. We thereafter
 
 
 27
 We conclude, finally, that the ALJ properly applied the sequential evaluation under 20 C.F.R. Sec. 404.1520 through the fourth step. We therefore AFFIRM the decision of the district court.
 
 
 
 *
 HONORABLE DAVID S. PORTER, United States District Court for the Southern District of Ohio, sitting by designation
 
 
 [1]
 In this August 25, 1983 opinion--which is not before this court--Judge Unthank vacated the ALJ's April 27, 1982 decision and remanded. In his later opinion, Judge Unthank summarizes his basis for reversal:
 An examination of the ALJ's 1982 Decision discloses that he concluded that the plaintiff's 'impairment is not severe, as it does not significantly limit the claimant's physical or mental abilities to perform basic work activities.' The ALJ did not specifically either exclude or include the duties of a coal miner or those of a nightwatchman in the general finding that the plaintiff could 'perform basic work activities.'
 This Court's Opinion of August 25, 1983, also made only general findings of a severe impairment and thus implicitly that the plaintiff could not return to 'his past relevant work' without specifically identifying reference to past work as a coal miner or work as a nightwatchman. The Court did specifically refer to the opinions of Drs. Stumbo and Martin that the plaintiff was unable to return to his 'past work as a coal miner' but such opinions made no reference to his past immediate work as a nightwatchman. The Court further observed '. . . that where a claimant is unable to return to his past relevant work, he is severly [sic] impaired and the Secretary must then proceed to assess his residual functional capacity, . . .'
 . . . In his more recent decision rendered in 1983, pursuant to order of remand, the ALJ became more specific in his findings that the plaintiff cannot perform the heavy exertion of a coal miner or work in a dusty environment but that he did have the residual capacity to perform the duties of his immediate past relevant work of nightwatchman.
 Memorandum Opinion (12/14/84).
 
 
 [2]
 The ALJ noted that claimant earned $5,251.20 in 1980 as a nightwatchman, while his 1981 Black Lung Benefits were being paid at a yearly rate of $5,035.20, plus medical benefits
 
 
 [3]
 Plaintiff apparently suffered a back injury during his years in the mines